UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------------x

In re:

JEFFERSON REALTY PARTNERS LLC,                    Chapter 11
                                                  Case No.: 18-44060-ess

                              Debtor.

-------------------------------------------------------------------------------x

JEFFERSON REALTY PARTNERS LLC,

                              Plaintiff,          Adv. Pro. No.: 21-01040-ess

         v.

1308 JEFFERSON CAPITAL LLC,
ERAN SILVERBERG,
1308 JEFFERSON DE LLC,
RIVERSIDE ABSTRACT LLC,

                              Defendants,

NORTHEAST BANK, A MAINE BANKING CORPORATION,

                              Intervenor-Defendant.

-------------------------------------------------------------------------------x


**MEMORANDUM DECISION ON INTERVENOR-DEFENDANT NORTHEAST BANK'S**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

*Appearances:*

Jonathan Warner, Esq.                     David K. Fiveson, Esq.
Warner & Scheuerman                       Butler Fitzgerald Fiveson & McCarthy, PC
6 West 18th Street (10th Floor)           9 East 45th Street (9th Floor)
New York, NY 10011                        New York, NY 10017
  *Attorneys for Plaintiff*                 *Attorneys for Intervenor-Defendant*
  *Jefferson Realty Partners LLC*           *Northeast Bank, A Maine Banking Corporation*

## Introduction

The history of the Chapter 11 bankruptcy case of Jefferson Realty Partners LLC ("Jefferson Realty"), and this adversary proceeding commenced by Jefferson Realty reaches back some five years. This history includes a consensual confirmation of a Chapter 11 plan, an assertedly unauthorized closing and transfer of Jefferson Realty's principal asset, a building located at 1308 Jefferson Avenue in Brooklyn (the "Property"), claims of forged and phony e-mail accounts, messages, and more.

In the course of this adversary proceeding, one defendant has been voluntarily dismissed, and another has been permitted to intervene as a defendant. And that intervenor-defendant, Northeast Bank, A Maine Banking Corporation ("Northeast Bank"), now seeks the entry of summary judgment in its favor on Count One of the Complaint.

The question before the Court on this summary judgment motion is a relatively narrow one. It is, in substance, whether Northeast Bank is entitled to judgment as a matter of law on the question whether the deed to the Property is, as asserted in Count One, void *ab initio*, or merely voidable. Northeast Bank argues that, at this stage in these proceedings, there is no genuine dispute of material fact that the deed is voidable, not void. And as a consequence, Northeast Bank asserts, it has and will continue to have a first position lien on the Property unless and until a court finds otherwise and voids the transfer of the deed.

## Jurisdiction

This Court has jurisdiction to adjudicate this adversary proceeding pursuant to Judiciary Code Sections 157(b)(1) and 1334(b), and the Standing Order of Reference dated August 28, 1986, as amended by the Order dated December 6, 2012, of the United States District Court for

the Eastern District of New York.  This is a core proceeding pursuant to Judiciary Code Section 157(b)(2)(A), and venue is proper before this Court pursuant to Judiciary Code Section 1409.

The following are the Court's findings of fact and conclusions of law to the extent required by Federal Rule of Civil Procedure 52, made applicable here by Bankruptcy Rule 7052.

### Background

It is helpful to provide some context as to Jefferson Realty's Chapter 11 case, the confirmed Chapter 11 plan and the associated settlement agreement, and of course, the procedural history of this adversary proceeding.

*Jefferson Realty's Chapter 11 Bankruptcy Case*

On July 15, 2018, Jefferson Realty filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  In its petition, Jefferson Realty states that it is a single asset real estate debtor, as that term is defined in Bankruptcy Code Section 101(51B).  And in Schedule D, Jefferson Realty lists the 1308 Jefferson Avenue property, and states that it is subject to a $1.8 million mortgage lien held by 1308 Jefferson Capital LLC ("Jefferson Capital") as secured creditor, and was later purchased by 1308 Jefferson DE LLC ("Jefferson DE").

The case progressed over the course of many months.  On December 2, 2019, this Court held a hearing on the confirmation of Jefferson Realty's amended Chapter 11 plan of reorganization, and found that it satisfied all of the requirements of Bankruptcy Code Section 1129(a).  *See In re Jefferson Realty Partners LLC*, Case No. 18-44060, Amended Chapter 11 Plan, ECF No. 61 (the "Plan").  It is worth noting that the Plan was confirmed consensually, and without objection by any party in interest.  And on December 6, 2019, the Court entered an order confirming the Plan (the "Confirmation Order").  *See In re Jefferson Realty Partners LLC*, Case No. 18-44060, Confirmation Order, ECF No. 75.

2

The Plan provides for Jefferson Realty to sell the Property to Jefferson Capital through a joint venture, Jefferson DE, which is an entity comprised of Eran Silverberg, Jefferson Capital, and 463 Wilson Investors LLC ("Wilson Investors"), an affiliate of Jefferson Realty.  Plan, Exh. A (Stipulation Settling Objection to Claim 3) at 4.

The Plan also provides that the sale of the Property will be the source of funds, or exit financing, for Jefferson Realty to complete the Plan, as set forth in a settlement agreement that is annexed to the Plan among Jefferson Capital, Jefferson Realty, and Lorenzo DeLuca, the manager of Jefferson Realty.  *Id*.  That settlement agreement provides that Jefferson DE, the joint venture, will obtain exit financing secured by the Property sufficient to make payments under the Plan to priority creditors as well as the initial payments due from it.  *Id*.

On November 14, 2020, the Property was transferred from Jefferson Realty to Jefferson DE, the joint venture.  Affirmation of David K. Fiveson, attorney for Northeast Bank (the "Fiveson Aff."), ECF No. 83, ¶ 3.  On December 4, 2020, Mr. DeLuca, the manager of Jefferson Realty, delivered the deed to the Property (the "Deed") into escrow.  Compl. ¶ 13.  *See* Fiveson Aff. ¶ 16 and Exh. D (Deed); Affirmation of Lorenzo DeLuca (the "DeLuca Aff."), ECF No. 102, ¶ 7.  And on December 14, 2020, the sale of the Property closed, and the Deed was delivered to Jefferson DE.  Compl. ¶ 14.  *See* DeLuca Aff. ¶ 8.

Also on December 14, 2020, Northeast Bank made a loan of $1.2 million to Jefferson DE, and in return, received a first lien mortgage on the Property from Jefferson DE as security.  Fiveson Aff. ¶ 5.  And on December 21, 2020, the Deed was recorded by Jefferson DE.  Fiveson Aff. ¶ 18.

*Selected Procedural History of this Adversary Proceeding*

On April 9, 2021, Jefferson Realty commenced this adversary proceeding by filing a Complaint against Jefferson Capital, Mr. Silverberg, Jefferson DE, and Riverside Abstract LLC ("Riverside Abstract").  Complaint, ECF No. 1.  In the Complaint, Jefferson Realty asserts that the Deed to the Property was improperly transferred from it to Jefferson DE, that Mr. Silverberg intentionally concealed the December 14, 2020 closing from Mr. DeLuca, and that this transfer was facilitated by a series of fraudulent and even criminal acts, including fraudulent and forged e-mails and letters.  Compl. ¶ 16.  *See* DeLuca Aff. ¶ 2.  For these reasons, Jefferson Realty claims, the transfer of the Deed to Jefferson DE was void *ab initio*, and the Deed should be declared void.

On July 22, 2021, Northeast Bank filed a motion to intervene as a defendant pursuant to Federal Rules of Civil Procedure 24(a)(2) and 24(b)(1)(B) and Bankruptcy Code Section 1109(b).  Motion to Intervene, ECF No. 26.  And on September 7, 2021, the Court entered an order granting Northeast Bank leave to appear in this action as an intervenor-defendant and authorizing it to serve and file an answer to the Complaint.  Order Granting Leave to Intervene, ECF No. 34.

On June 29, 2022, Northeast Bank filed this Motion for Summary Judgment seeking a determination, as a matter of law, that the Deed dated November 14, 2020, from Jefferson Realty to Jefferson DE, is not void *ab initio*.

In support of the Summary Judgment Motion, on June 30, 2022, Northeast Bank filed the Intervenor's Statement of Material Facts Pursuant to Rule 7056-1c, which sets forth the factual allegations underlying these matters.  Intervenor's Statement of Material Facts Pursuant to Rule 7056-1c, ECF No. 82.  On that same date, Northeast Bank also filed the Affirmation of its

attorney Mr. Fiveson, and a Memorandum of Law in Support of its Motion for Summary Judgment Dismissing Count One of the Adversary Complaint to Declare the Vesting Deed Void (the "Northeast Bank Mem."). Northeast Bank Mem., ECF No. 85. And on August 30, 2022, Northeast Bank filed a Reply Affirmation of Mr. Fiveson in further support of the Summary Judgment Motion (the "Fiveson Reply Aff."). Fiveson Reply Aff., ECF No. 104.

Northeast Bank argues that there is no genuine dispute as to a material fact that the Deed is not void, but merely voidable, because the undisputed facts show that the Deed to the Property is a valid deed, as opposed to a forged deed or a deed that was executed under false pretenses. Northeast Bank Mem. at 3. And Northeast Bank asserts that the validity of the Deed is not undermined by Jefferson Realty's allegations that the transfer of the Deed from Jefferson Realty to Jefferson DE was fraudulently induced. *Id*. For these reasons, Northeast Bank disagrees that the Deed was void *ab initio*, as alleged in the Complaint. Northeast Bank Mem. at 2. It seeks a determination that as a matter of law, the Deed is voidable, as opposed to void *ab initio*, and the entry of judgment dismissing Count One of the Complaint. Northeast Bank Mem. at 1, 5.

Jefferson Realty opposes the Summary Judgment Motion. On August 18, 2022, it filed a Response to the Defendant's Statement of Material Facts (the "Response to Material Facts"), in which it admitted, denied, or disputed Northeast Bank's statement of material facts. Response to Material Facts, ECF No. 99. On that same date, it also filed a Memorandum of Law in Opposition to the Motion (the "Jefferson Realty Opp"). Jefferson Realty Opp., ECF No. 100. And it filed the Affidavit in Opposition of Jefferson Realty's manager, Mr. DeLuca.

Jefferson Realty responds that Northeast Bank has not met its burden to show that there is no genuine dispute of material fact as to the issues to be resolved in the context of Count One. It asserts that in order to determine whether the Deed is void *ab initio*, or void, there are genuine

and triable issues of fact to be resolved, including whether the Deed was based upon a forgery, or alternatively, was obtained under false pretenses.  For these reasons, among others, Jefferson Realty argues that Northeast Bank has not met the Rule 56 standard for summary judgment, and that the Summary Judgment Motion should be denied.  Jefferson Realty Opp. at 6-11.

From time to time, and on July 12, 2023, the Court held pre-trial conferences, as well as oral argument on this Summary Judgment Motion, at which the parties, by their counsel, appeared and were heard, and the record is now closed.

*The Allegations of the Complaint*

In view of the nature of the relief sought in this Summary Judgment Motion, it is helpful to review the principal allegations of the Complaint.

In the Complaint, Jefferson Realty alleges that Jefferson Capital and its principal Mr. Silverberg engaged in "bad faith and criminal acts . . . in order to steal the [Property] from the Debtor's estate in contravention of the Plan . . . and the bankruptcy law." Compl. ¶ 2.  It also states that "[Jefferson Capital's and Mr. Silverberg's] use of a forged signature to authorize the release of the transaction documents renders the deed so delivered a nullity." *Id.*

In addition, Jefferson Realty alleges that on November 24, 2020, its representative, Mr. DeLuca sent an e-mail advising that $350,000 was due to him, as agent for Wilson Investors, upon the closing of the sale of the Property.  Compl. ¶ 10.  *See* DeLuca Aff. ¶ 4.  And it alleges that instead, Mr. DeLuca received an e-mail with an attached bill incorrectly allocating charges for property taxes, water, and sewer in the amount of $83,663.05 to Jefferson Realty, in contravention of the Plan.  Compl. ¶ 10.  *See* DeLuca Aff. ¶ 4.

And Jefferson Realty alleges that on November 30, 2020, it was advised that a closing was scheduled for December 4, 2020, and that an "all-hands" conference call was set on

December 1, 2020, to address whether "the documents were in place and properly signed," as well as to confirm "when [Mr.] DeLuca expected to deliver the documents to the Title company." Compl. ¶ 12. *See* DeLuca Aff. ¶ 6. It also alleges that it is not aware of whether the "all-hands" conference call occurred, and that "if it did, [Mr.] DeLuca was excluded, evidently to further the fraud that [Mr.] Silverberg was planning." *Id.*

The Complaint states that on December 4, 2020, Mr. DeLuca personally delivered the Deed to Jefferson DE and to the escrow agent, Riverside Abstract, together with a letter stating that the Deed was to be held in escrow, pending delivery to Mr. DeLuca of a lump sum of $350,000, as required by the Plan. Compl. ¶ 13. *See* DeLuca Aff. ¶¶ 3, 7. Jefferson Realty alleges that contrary to the information received by Mr. DeLuca, the transaction did not close on December 4, 2020, and Mr. DeLuca continued to receive requests for signatures and other documents through December 17, 2020. Compl. ¶ 14. And it alleges that it was never informed that the transaction closed on December 14, 2020, and that Mr. DeLuca never released Riverside Abstract from its escrow obligations or authorized the transaction to proceed. *Id.* *See* DeLuca Aff. ¶ 8.

Instead, Jefferson Realty asserts, on information and belief, that Riverside Abstract "in violation of the terms of transmittal, proceeded to release the documents and deliver the Deed to [Jefferson DE] to permit the transaction to close." Compl. ¶ 15. *See* DeLuca Aff. ¶ 2. And it alleges that Jefferson Capital and Mr. Silverberg concealed the closing and misled Mr. DeLuca as to why the closing was delayed. Compl. ¶ 16. The Complaint states that on December 23, 2020, Mr. DeLuca discovered that the Deed was recorded on December 21, 2020, and that the transaction had closed on December 14, 2020. Compl. ¶ 17. *See* DeLuca Aff. ¶ 8. And it notes that in January 2021, Daniel Zinman, Esq., counsel for Jefferson Capital and Mr. Silverberg,

"disclaimed, on the record before the Court, knowledge of how [Riverside Abstract] had released the Deed from the escrow."  *Id.*

Jefferson Realty also alleges that Jefferson DE sent a letter by e-mail in January 2021 "which confirms the fraud."  Compl. ¶ 18.  That letter allegedly includes attachments which indicate Jefferson DE's "position as to the Effective Date Obligations" under the Plan, and set forth an allocation of charges associated with the closing charges for the transaction.  *Id.*  And it alleges that this letter's "offer of a 'settlement' makes clear that Zinman and Silverberg's emails were misleading and possibly intentionally deceptive."  Compl. ¶ 19.  Jefferson Realty also alleges that "[Jefferson Capital and Mr. Silverberg] has not denied that a forgery occurred," and points to Riverside Abstract as "the perpetrator for reasons related to improper retention of escrowed funds."  Compl. ¶ 20.

And Jefferson Realty also makes allegations concerning a series of assertedly suspicious circumstances surrounding the communications leading to the release of the Deed and the closing of the sale of the Property.  It asserts:

- that "a purported signature page of a settlement statement . . . purporting to approve the transaction . . . appeared to be a transpositional forgery of [Mr. DeLuca's] signature" (Compl. ¶¶ 21, 22);

- that "Mr. DeLuca did not sign that document or any other similar original document, and the document is a forgery" (Compl. ¶ 24);

- that a comparison of two documents reveals that Mr. DeLuca's signature affixed to the settlement statement is the result of a copy and paste of his signature from one document to another (Compl. ¶ 24);

- that a PDF of the forged signature page was sent to Riverside Abstract as an attachment to an e-mail from someone pretending to be Mr. DeLuca, from an e-mail address that was not Mr. DeLuca's address and that he has never used (Compl. ¶¶ 25, 26); and

- that Riverside Abstract was well aware of Mr. DeLuca's correct e-mail address from many prior communications (Compl. ¶ 27).

Finally, Jefferson Realty alleges that Jefferson Capital, Mr. Silverberg and Jefferson DE engaged in:

> crimes committed in aid of the fraud that was planned by [Mr.] Silverberg and others to deprive Wilson [Investors] of the proceeds of the refinancing [of the Property], and to deny [Jefferson Realty] of the means to implement the Plan . . . by shifting [Jefferson DE's] obligations onto Wilson [Investors].

Compl. ¶ 28. And it alleges that these "badges of fraud were present when [Mr. Silverberg and Jefferson Capital] refused to share information regarding the closing, the distribution of proceeds, and how he intended to perform under the Plan." Compl. ¶ 29.

Jefferson Realty asserts five claims for relief, and one is at issue in this Summary Judgment Motion. In Count One, it seeks a declaratory judgment pursuant to Judiciary Code Section 2201 and Bankruptcy Rule 7001(9) that the Deed is void *ab initio*, and "a declaration that the Deed and subsequent transactions are all void." Compl. ¶ 33.

*Northeast Bank's Motion for Summary Judgment*

On June 29, 2022, Northeast Bank brought this Motion for Summary Judgment under Federal Rule of Civil Procedure 56, made applicable here by Bankruptcy Rule 7056. Intervenor's Motion for Summary Judgment, ECF No. 76 (the "Mot."). The Summary Judgment Motion is supported by Northeast Bank's Memorandum of Law and the Affirmation and Reply Affirmation of its counsel, Mr. Fiveson.

9

Northeast Bank makes several arguments in support of its Summary Judgment Motion.  It states that, as a matter of law, "[a] Deed released from escrow without authority is not void but only voidable," and that it is a *bona fide* encumbrancer for value.  Northeast Bank Mem. at 2-3.  It also points out that Jefferson Realty does not dispute that the Deed was signed and delivered to Riverside Abstract by Mr. DeLuca.  Northeast Bank Mem. at 2.  And it argues that Jefferson Realty's central allegation is not that somehow, the Deed was not signed and delivered by Mr. DeLuca, but rather, that Riverside Abstract's release of the Deed as the escrow agent was based upon Mr. Silverberg's false and even fraudulent representations.  *Id*.  For these reason, Northeast Bank argues, the Deed is not void.  *Id*.

Northeast Bank states that a deed that bears the conveyor's signature is voidable where the signature or conveyance was induced by fraud, but it is not void *ab initio* unless the signature itself was forged.  Northeast Bank Mem. at 2 (citing *Shau Chung Hu v. Lowbet Realty Corp.*, 161 A.D.3d 986, 988, 78 N.Y.S.3d 150, 153 (N.Y. App. Div. 2d Dep't 2018)).  It points to the decision of the New York Court of Appeals in *Faison v. Lewis*, and argues that the distinction between a voidable deed and a deed that is void *ab initio* was explained by that Court as follows:

> "[a] forged deed that contains a fraudulent signature is distinguished from a deed where the signature and authority for conveyance are acquired by fraudulent means.  In such latter cases, the deed is voidable.  The difference in the nature of the two justifies this different legal status.  A deed containing the title holder's actual signature reflects 'the assent of the will to the use of the paper or the transfer,' although it is assent 'induced by fraud, mistake or misplaced confidence' (*Marden*, 160 NY at 50; *see also Rosen v Rosen*, 243 AD2d 618, 619 [2d Dept. 1997]; 26A CJS, Deeds § 153 ['where the grantor knowingly executes the very instrument intended, but is induced to do so by some fraud in the treaty or by some fraudulent representation or pretense, the deed is merely voidable'])."

Northeast Bank Mem. at 2 (quoting *Faison v. Lewis,* 25 N.Y.3d 220, 224-25 (2015).

Northeast Bank also cites *Weiss v. Phillips*, a decision of the New York Supreme Court's Appellate Division-First Department, where the court recognized the difference between a deed

that "'was the result of fraudulent inducement, rather than the result of a forged deed or one executed under false pretenses.'"  Northeast Bank Mem. at 2 (quoting *Weiss v. Phillips*, 157 A.D.3d 1, 11, 65 N.Y.S.3d 147, 156 (N.Y. App. Div. 1st Dep't 2017).  And there, the court concluded that "'the deed . . . was voidable, not void *ab initio*.'"  *Id*.

And Northeast Bank argues that it is a *bona fide* encumbrancer for value.  Northeast Bank Mem. at 3.  It points again to the New York Court of Appeals' decision in *Faison v. Lewis*, where the Court observed that "'a voidable deed . . . until set aside . . . has effect of transferring title to the fraudulent grantee and . . . being thus clothed with all the evidence of good title, may encumber the property to a party who becomes a purchaser in good faith.'"  Northeast Bank Mem. at 3 (quoting *Faison*, 25 N.Y.3d at 225).

Northeast Bank also asserts that it is protected under Section 266 of New York's Real Property Law, which addresses the "'Rights of purchaser or incumbrancer for valuable consideration.'"  Northeast Bank Mem. at 3 (quoting N.Y. R.P.L. § 266).  That Section provides in part that it "'does not in any manner affect or impair the title of a purchaser or incumbrancer for a valuable consideration, unless it appears that he had previous notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor.'"  *Id*.  It states that it was a *bona fide* encumbrancer because at the time it made the $1.2 million loan to Jefferson DE, secured by the mortgage on the Property, it had no knowledge of Jefferson Realty's claims.  Northeast Bank Mem. at 4.

Northeast Bank also points to this Court's Confirmation Order, which states that the Purchaser, defined as Jefferson DE, is a good faith purchaser under Bankruptcy Code Section 363(m).  Northeast Bank Mem. at 4 (citing Confirmation Order).  It notes that the Confirmation Order is "final and there is no appeal or motion to vacate the Order."  Northeast Bank Mem. at 4.

And Northeast Bank notes that the Confirmation Order also authorizes the assignment of the first mortgage held by Jefferson DE to Northeast Bank, and that the mortgage would be "a valid, binding, and perfected first lien." Northeast Bank Mem. at 4. It states that "it is axiomatic that Northeast was entitled to rely on the [Confirmation] Order and Stipulated Order in believing the Deed was valid security for its loan." *Id*. To the same effect, it points to the uncontroverted affidavit of its employee, Amanda Eckhoff stating that "Northeast Bank had no notice in the public record or actual notice there was a claim the release of the Deed from escrow was not authorized." Northeast Bank Mem. at 4 (citing Affidavit of Amanda Eckhoff, ECF No. 84, ¶ 6).

Northeast Bank concludes that it is entitled to dismissal and judgment as a matter of law on Count One of the Complaint, that it "is a *bona fide* encumbrancer for value," and that its "recorded mortgage is free and clear of [Jefferson Realty's] unrecorded claims." Northeast Bank Mem. at 5.

### *Mr. DeLuca's Affidavit in Opposition to Northeast Bank's Motion for Summary Judgment*

Jefferson Realty also submits the affidavit of its manager, Lorenzo DeLuca, in opposition to Northeast Bank's Summary Judgment Motion. In his affidavit, Mr. DeLuca testifies that the closing of the sale of the Property took place without his knowledge and consent, as a consequence of the fraud and forgery which prompted Riverside Abstract to release the Deed from escrow under false pretenses. DeLuca Aff. ¶ 2. Mr. DeLuca also testifies that pursuant to the confirmed Plan, Jefferson Realty was required to approve certain disbursements including a payment of $350,000 to him, as agent for Wilson Investors, from the proceeds of the refinancing of the Property. DeLuca Aff. ¶ 3.

In addition, Mr. DeLuca testifies that on November 24, 2020, he sent an e-mail to all parties involved in the sale of the Property, advising that $350,000 was owed to Wilson Investors

at the closing.  DeLuca Aff. ¶ 4.  He states that in response to his e-mail, Mr. Silverberg responded that Jefferson Realty was responsible, as seller, for "charges for property taxes, water, and sewer in the amount of $83,663.05".  Mr. DeLuca testifies that pursuant to the Plan, these charges are the responsibility of the purchaser.  *Id.*

Mr. DeLuca further testifies that on November 30, 2020, Mr. Silverberg's bankruptcy counsel e-mailed to state that "it was 'possible to get the 350K on the close . . .' subject only to whether [Jefferson Realty's] counsel had 'enough cash on hand to make all distributions to be made on the effective date other than real property taxes and water sewer [charges] which will be made at closing.'"  DeLuca Aff. ¶ 5.  And he testifies that later that day on November 30, 2020, he was advised that the closing was scheduled for December 4, 2020 and a conference call would take place on December 1, 2020 to ascertain whether all of the closing documents were in place and to determine when he would deliver the documents to Riverside Abstract.  DeLuca Aff. ¶ 6.

Mr. DeLuca testifies that, "[on] December 4, 2020, I delivered the Deed conveying the Premises to 1308 Jefferson to Riverside as escrow agent, with a letter directing Riverside to hold the Deed in escrow pending delivery to DeLuca, as agent for the minority member, the sum of $350,000."  DeLuca Aff. ¶ 7.  Mr. DeLuca testifies that Riverside Abstract "allegedly released the Deed from escrow, on the authority of Mr. Silverberg", who Mr. DeLuca testifies had engaged in "various alleged acts of fraud, forgery and deception which apparently caused Riverside Abstract to release the Deed under false pretenses."  DeLuca Aff. ¶ 8.

Mr. DeLuca testifies that on December 23, 2020, he learned that the Deed was recorded with the Kings County Clerk on December 21, 2020, and that the sale of the Property had closed on December 14, 2020, all without his knowledge or consent.  DeLuca Aff. ¶ 8.  He testifies that the Deed was recorded with the Kings County Clerk under false pretenses.  DeLuca Aff. ¶ 9.

13

And he testifies that Riverside Abstract released the Deed from escrow upon its receipt of a "forged settlement statement emailed from a phony email account" that was intended to mirror Mr. DeLuca's account. *Id.* Mr. DeLuca testifies that the forged signature which prompted the release of the Deed from escrow was sent from "delucalorenzo255@gmail.com", and that his actual e-mail address is "lorenzodeluca50@gmail.com". *Id.*

Finally, Mr. DeLuca concludes that the Deed was "both based on forgery (the forged settlement statement) and obtained by false pretenses (the phony email from a fake email account intended to deceive Riverside into believing that the forged document was being emailed from me)". DeLuca Aff. ¶ 11. For these reasons, he testifies, the Deed is void *ab initio*. *Id.*

*Jefferson Realty's Opposition to Northeast Bank's Motion for Summary Judgment*

Jefferson Realty opposes the Summary Judgment Motion. It argues that Northeast Bank has not met its burden to show that there is no genuine dispute of material fact here. In particular, Jefferson Realty argues that there are genuine and triable issues of fact as to whether the Deed was based upon a forgery, or alternatively, was obtained under false pretenses. And it asserts that whether Northeast Bank was a *bona fide* encumbrancer for value is of no consequence.

Jefferson Realty also argues that Northeast Bank misinterprets the applicable New York law. Jefferson Realty Opp. at 2. It asserts that a deed based on a forgery or obtained by false pretenses is void *ab initio*, and that a mortgage based on any such deed is likewise invalid. *Id.* For these reasons, among others, Jefferson Realty argues that Northeast Bank has not met the Rule 56 standard for summary judgment, and that the Summary Judgment Motion should be denied. Jefferson Realty Opp. at 6-11.

As to the record before the Court, Jefferson Realty responds that the Court may enter summary judgment only if it concludes that there is no genuine dispute of material fact present. Jefferson Realty Opp. at 6.  It states that on a summary judgment motion, the role of the Court "'is not to resolve dispute issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party.'" Jefferson Realty Opp. at 6 (citing cases).

Jefferson Realty also states that the party moving for summary judgment bears the initial burden of informing the Court of the basis for its motion.  Jefferson Realty Opp. at 6 (citing cases).  And it adds that "'[s]ummary judgment is appropriate only if the moving party shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.'"  Jefferson Realty Opp. at 6 (quoting *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003)).  And it points out that the Court "must view the record in the light most favorable to the non-moving party when deciding a motion for summary judgment." Jefferson Realty Opp. at 6-7 (citing cases).

And Jefferson Realty responds that Northeast Bank has not met its initial burden on this motion since it has failed to show that, as a matter of law, the Deed was neither a product of forgery nor obtained under false pretenses.  Jefferson Realty Opp. at 7.  It states that "Northeast Bank has focused only on whether the Deed itself was a product of forgery, [and has ignored] that [it] has alleged that the Deed was both a product of forgery and was obtained under false pretenses."  *Id*.  It argues that "Northeast Bank's failure to eliminate any triable issue of fact whether the Deed was a product of forgery and/or obtained under false pretenses mandates the denial of Northeast Bank's motion for summary judgment."  *Id.*  For all of these reasons,

Jefferson Realty asserts, this Court should deny Northeast Bank's premature Summary Judgment Motion and permit the opportunity for a "fully developed record" to be created. *Id.*

And as to the question of New York law, Jefferson Realty responds that "New York Courts have repeatedly held that a deed *based on* forgery *or* obtained by false pretenses is void *ab initio*, and a mortgage based on such a deed is likewise invalid." Jefferson Realty Opp. at 8 (citing cases). It states that this rule exists because "'[i]f a document purportedly conveying a property interest is void, it conveys nothing, and a subsequent *bona fide* purchaser or *bona fide* encumbrancer for value receives nothing.'" Jefferson Realty Opp. at 9 (quoting *Citibank N.A. v. Burns*, 187 A.D.3d 839, 840, 130 N.Y.S.3d 720, 721 (N.Y. App. Div. 2d Dep't 2020)).

Jefferson Realty asserts that the issue presented by the Motion is not "whether the Deed itself was forged as Northeast Bank argues, but whether the Deed was based upon forgery and/or otherwise obtained by false pretenses." Jefferson Realty Opp. at 9. It contends that "Northeast Bank has failed to submit a scintilla of proof refuting the Debtor's well-pleaded allegations showing that the Deed was based upon a forgery and was obtained under false pretenses," and that Northeast Bank was required to "support its Motion with admissible evidence establishing *prima facie* that the Deed was neither based upon forgery nor obtained under false pretenses in order to meet its initial burden of proof but has failed to do so." *Id.* And in particular, Jefferson Realty notes that Northeast Bank has not submitted any evidence refuting its allegation that the Deed was "obtained as a result of a forged settlement statement emailed from an imposter email account." *Id.*

Jefferson Realty also questions Northeast Bank's reliance on the New York Court of Appeals' decision in *Faison*. It observes that there, the Court drew a distinction between a forged deed and a deed acquired by fraudulent means for the purposes of the statute of

16

limitations, and not to "overrule the well-settled rule that a deed based on forgery or obtained by false pretenses is void *ab initio*, and that a mortgage based on such a deed is likewise invalid." Jefferson Realty Opp. at 10 (citing *Selene Fin., L.P. v. Jones*, 203 A.D.3d 1191, 1194, 166 N.Y.S.3d 639, 642 (N.Y. App. Div. 2d Dep't 2022)).  And it argues that whether Northeast Bank "was a *bona fide* purchaser for value is of no consequence where triable issues of fact exist whether the Deed was the product of a forgery and/or was obtained under false pretenses." Jefferson Realty Opp. at 10.

Jefferson Realty further responds that while Northeast Bank might have established in its moving papers that it lacked actual notice of the forgery and false pretenses, it has not addressed the issue of constructive notice.  Jefferson Realty Opp. at 11.  And it states that it is "well-settled that a mortgagee will be charged with constructive notice if it is aware of facts that would lead a reasonable, prudent lender to make inquiries of the circumstances."  Jefferson Realty Opp. at 11 (citing *Miller-Francis v. Smith-Jackson*, 113 A.D.3d 28, 34, 976 N.Y.S.3d 34, 38 (1st Dept. 2013)).  Accordingly, it argues, "if a reasonable inquiry would reveal relevant evidence of fraud, then failure to investigate will divest the mortgagee of *bona fide* encumbrancer status."  Jefferson Realty Opp. at 11.  Jefferson Realty argues that it should be permitted "to depose Northeast [Bank] witnesses concerning their constructive notice of the fraud and to develop a full factual record."  *Id*.

### *Northeast Bank's Reply in Further Support of the Summary Judgment Motion*

In its Reply Affirmation, Northeast Bank states that "[d]espite the allegations to the contrary in [Jefferson Realty's] opposition papers, it is irrefutable that the deed dated November 14, 2020 (and acknowledged December 4, 2020), from Jefferson Realty . . . to [Jefferson DE] was neither forged nor obtained under 'false pretenses.'"  Fiveson Reply Aff. ¶ 3.

In support of its assertion that the Deed was not forged, Northeast Bank states that "the deed was properly executed before a notary and was duly acknowledged by the licensed notary," who is an attorney.  Fiveson Reply Aff. ¶ 6.  It also observes that "[a] certificate of acknowledgment attached to an instrument such as a deed or a mortgage raises the presumption of due execution, 'which presumption . . . can be rebutted *only* after being weighed against any evidence adduced to show that the subject instrument was not duly executed."  Fiveson Reply Aff. ¶ 6 (quoting *ABN AMRO Mortg. Group, Inc. v. Stephens*, 91 A.D.3d 801, 803, 939 N.Y.S.2d 70, 72-73 (App. Div. 2d Dep't 2012), and citing cases).

And Northeast Bank replies that an acknowledgment can only be rebutted "'on proof *so clear and convincing* so as to amount to a *moral certainty*.'"  Fiveson Reply Aff. ¶ 6 (quoting *Albany Cnty. Sav. Bank v. McCarty*, 149 N.Y. 71, 80 (1896)).  It also notes that an acknowledgment cannot be rebutted by evidence of "doubtful character such as . . . *interested witnesses*."  Fiveson Reply Aff. ¶ 7 (quoting *Beshara v. Beshara*, 51 A.D.3d 837, 838, 858 N.Y.S.2d 351, 352 (N.Y. App. Div. 2d Dep't 2008) and citing cases) (emphasis in original).  And Northeast Bank observes that "[c]ourts have repeatedly held that a certificate of acknowledgement should not be invalidated solely on the unsupported testimony of an interested witness."  Fiveson Reply Aff. ¶ 7 (citing cases).  To the same effect, it states that "it has been held that unsupported testimony of an interested witness is insufficient, as a *matter of law*, to rebut the presumption that a notarized signature is authentic."  Fiveson Reply Aff. ¶ 7 (citing cases) (emphasis in original).

Northeast Bank states that Mr. DeLuca's "interested conclusion" that the signature on the Deed "is a 'forgery' cannot overturn the acknowledgement and, as a result, raises no fact issue."  Fiveson Reply Aff. ¶ 9.  Put another way, it states that "there is no disinterested evidence (much

less clear and convincing evidence to a moral certainty)," that the Deed was not executed by Mr.

DeLuca. *Id.* And it adds that in the Complaint, Jefferson Realty alleges that "on December 4,

2020, [Mr. DeLuca] personally delivered the deed transferring [Jefferson Realty's] Property to

the Buyer [Jefferson DE] to the escrow agent Riverside Abstract." Fiveson Reply Aff. ¶ 10

(quoting Compl. ¶ 13). *See* DeLuca Aff. ¶ 7.

Northeast Bank also replies that the Deed was not obtained by false pretenses. It points

to the New York Court of Appeals' decision in *Marden v. Dorthy*, which describes the obtaining

of a deed by false pretenses as follows:

> A party cannot make a deed without some assent of the will. It must be a
> conscious act, accompanied by an intention . . . The genuine signature of a party
> may be procured by some trick or device to a piece of blank paper, and a deed or
> other instrument subsequently written over it without his knowledge. It may be
> that a party could procure another to sign a paper by means of hypnotic
> suggestions or influences, but a signature procured under such circumstances
> could have no more effect than if made by the hand of the hypnotizer. It does not
> follow in such a case that because the signature is genuine that the party signed a
> deed or other contract. It is simply a spurious paper and of no more effect than
> any other forgery.

Fiveson Reply Aff. ¶ 11 (quoting *Marden v. Dorthy*, 160 N.Y. 39, 49 (1899)).

It also replies that "fraudulent inducement" is "exemplified" by the circumstances in

*Weiss v. Phillips*, where "the deed was the result of fraudulent inducement, rather than the result

of a forged deed or one executed under false pretenses," because:

> [T]he tortfeasor (at the time, a paralegal assigned to procure the deed transfer)
> obtained the owner's signature on the deed purportedly to transfer the property
> back to its original owner . . . The paralegal presented the owner with blank deed,
> which she signed. The subsequent deed transfer was the result of a classic
> fraudulent inducement, because the owner believed that she was signing the deed
> in order to transfer the property back to its original owner . . . Instead, the deed
> transferred the property to the paralegal's mother and then himself, before they
> obtained a loan and mortgage from Weiss. Thus, the deed here was voidable, not
> void ab initio.

Fiveson Reply Aff. ¶ 12 (quoting *Weiss*, 157 A.D.3d at 11, 65 N.Y.S.3d at 156).

Here, Northeast Bank replies, Jefferson Realty "had every intention of conveying" the Property, and "concedes it knowingly signed and delivered the deed to Riverside." Fiveson Reply Aff. ¶ 13. And it notes that Jefferson Realty was "directed to sell, transfer and convey the Property to the Purchaser" as set forth in its confirmed Plan. Fiveson Reply Aff. ¶ 13 (quoting Confirmation Order at 2). In light of this record, Northeast Bank states, Jefferson Realty's "conclusory claim that the deed was obtained by false pretenses" is insufficient to create a genuine dispute of material fact sufficient to deny summary judgment. Fiveson Reply Aff. ¶ 14.

In addition, Northeast Bank replies that this Court's Confirmation Order directed the Jefferson Realty to convey the Property to Jefferson DE, so that it is "disingenuous" for it now to claim that "it was tricked into taking the very same action that was ordered by the Court (i.e. the execution of the deed)." Fiveson Reply Aff. ¶ 15. It notes that while Jefferson Realty and Mr. DeLuca assert that the execution of the Deed was contingent on Mr. DeLuca's entity, Wilson Investors, receiving $350,000 from the sale proceeds, "there is no such contingency set forth in the [Confirmation Order], the [Plan], or any order of this Court." Fiveson Reply Aff. ¶ 16.

And in all events, Northeast Bank observes, "there would not be a potential pot of funds from which to draw any distribution without [Jefferson Realty] first transferring the deed and concluding the sale of the property. The execution of the deed was therefore indisputably intentional and purposeful, and not the product of trickery or 'artifice.'" Fiveson Reply Aff. ¶ 17. To the same effect, it notes that the Plan provides that any distribution to Wilson Investors is "'at the sole discretion of the managing member'" of Jefferson DE, the purchaser. Fiveson Reply Aff. ¶ 18.

Northeast Bank also replies that "the relevant statutes, case law and the prior Orders in this case" makes it clear that the Deed "is, at best, voidable and not void *ab initio*." Fiveson

Reply Aff. ¶ 19.  And under such circumstances, "a subsequent *bona fide* purchaser or encumbrancer for value (such as Northeast Bank here) is protected under New York Real Property Law § 266."  Fiveson Reply Aff. ¶ 21.  It asserts that here, "Mr. DeLuca knowingly executed the deed as manager of [Jefferson Realty].  This undisputed fact distinguishes this case from a case in which the deed itself is a forged instrument and void *ab initio*."  Fiveson Reply Aff. ¶ 22.

And Northeast Bank states that this Court's Confirmation Order "(i) judicially established the purchaser [Jefferson DE] as a good faith purchaser; and (ii) provided the prior mortgagee must assign its interest to [Northeast Bank]."  Fiveson Reply Aff. ¶ 23.  It asserts that "it is axiomatic that Northeast did rely and remains entitled to rely on the Order" for the protections that it provides.  *Id.*  It notes that the Confirmation Order is final and has not been appealed.  *Id.*

Further, Northeast Bank replies that the Confirmation Order provides that "all claims and interests attach to the proceeds of the sale," and these would include any claims of Jefferson Realty or Mr. DeLuca.  Fiveson Reply Aff. ¶ 24.  It characterizes this dispute as a disagreement over "how the proceeds of the sale were to be distributed among the members of [Jefferson DE]," and asserts that Jefferson Realty "may not magically transform that dispute into a claim that (i) rescinds the sale; (ii) voids the Deed *ab initio*; and (iii) serves to extinguish the mortgage granted to Northeast Bank."  *Id.*

And finally, Northeast Bank replies that it had no actual or constructive knowledge of Jefferson Realty's claims.  It points to the affidavit of Amanda Eckhoff stating that it "had no prior actual knowledge and no prior constructive knowledge of any alleged defect in title," to the Property, or of any of Mr. DeLuca's claims.  Fiveson Reply Aff. ¶ 26 (citing Affidavits of Amanda Eckhoff, ECF No. 40, Exh. 1, ECF No. 84, ¶ 6).  For all of these reasons, Northeast

Bank concludes, the Deed is not void *ab initio*, because it is "unquestionably afforded the protections of a *bona fide* encumbrancer for value," and to the extent that the Deed may be voidable, "it is, in any event, subject to Northeast Bank's first lien mortgagee interest."  Fiveson Reply Aff. ¶ 27.

### **The Applicable Legal Standards**

*Summary Judgment Under Rule 56*

Federal Rule of Civil Procedure 56, made applicable here by Bankruptcy Rule 7056, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

The moving party bears the burden to demonstrate the absence of a genuine dispute as to any material fact, and all of the reasonable inferences to be drawn from the underlying facts must be viewed by the court in the light most favorable to the party opposing the motion.  *See Anderson*, 477 U.S. at 249, 255; *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (observing that the court's role is "to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inference in favor of that party, and to eschew creditability assessments").

Where a defendant seeks summary judgment, it must demonstrate that there is no genuine dispute as to a material fact as to at least one necessary element of the plaintiff's claim.  If it does not, then summary judgment will be denied.  *See Smith v. Goord*, 2008 WL 902184, at *4 (N.D.N.Y. Mar. 31, 2008), *aff'd in part*, *remanded in part*, 375 F. App'x 73 (2d Cir. 2010)

(citing *Anderson*, 477 U.S. at 250 n.4).  But where the defendant meets its burden to show that there is no genuine dispute as to a material fact as to at least one necessary element of the plaintiff's claim, then it is entitled to judgment as a matter of law on that claim.

Once the moving party satisfies its initial burden, "the burden then shifts to the nonmoving party to come forward with evidence sufficient to create a genuine dispute as to a material fact for trial." *Silverman v. United Talmudical Acad. Torah Vyirah, Inc.* (*In re Allou Distribs., Inc.*), 446 B.R. 32, 49 (Bankr. E.D.N.Y. 2011).

As the Supreme Court has observed, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party must present "significant probative evidence" that a genuine dispute as to a material fact exists. *Anderson*, 477 U.S. at 249, 256.  "Where the record taken as a whole could not lead a rational trier of fact to find for the no-moving party, there is no 'genuine issue for trial'" and summary judgment is appropriate. *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 289 (1968)).  *See Anderson*, 477 U.S. at 249-50 (observing that "if the evidence is merely colorable . . . or is not significantly probative . . .  summary judgment may be granted").

As this Court has noted, statements in the pleadings, standing alone, do not meet this burden. *In re Allou Distribs., Inc.*, 446 B.R. at 49.  Rather, "[e]stablishing such facts requires going beyond the allegations of the pleadings as the moment has arrived to 'put up or shut up.'" *In re Eugenia VI Venture Holdings, Ltd. Litig.*, 649 F. Supp. 2d 105, 117 (S.D.N.Y. 2008) (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000), *aff'd*, 370 F. App'x 192 (2d Cir. 2010), *cert. denied*, 540 U.S. 811 (2003)).  This means that "[u]nsupported allegations in the pleadings . . . cannot create a material issue of fact." *In re Eugenia VI Venture Holdings*, 649

F. Supp. 2d at 117 (citation omitted).  "Rule 56(e) . . .  requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answer to interrogatories, and admissions on file,' [and] designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  A party "must 'set forth' by affidavit or other evidence 'specific facts' to survive a motion for summary judgment . . . and must ultimately support any contested facts with evidence adduced at trial."  *Bennett v. Spear*, 520 U.S. 154, 168 (1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

And as this Court has observed, "[t]he non-moving party may not establish that there is a genuine issue to be resolved at trial through mere allegations or denials of the adverse party's pleadings, but rather must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law."  *Blake v. Fusco* (*In re Fusco*), 641 B.R. 438, 454 (Bankr. E.D.N.Y. 2022) (quoting *Beare v. Millington*, 2014 WL 1236750, at *3 (E.D.N.Y. Mar. 25, 2014), *aff'd*, 613 F. App'x 56 (2d Cir. 2015) (internal citations omitted)).  *See Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008) (stating that "a party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory . . . or based on speculation." (citing *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996))).  *See also DeBernardo v. Lowe's Home Centers*, 2023 WL 2291882, at *1 (2d Cir. Mar. 1, 2023) (stating that under Rule 56(a), "summary judgment should be granted if 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law,'" and that "a genuine dispute exists when 'the evidence is such that a reasonable jury could decide in the non-movant's favor'" (citing *Kee v. City of New York*, 12 F.4th 150, 158 (2d Cir. 2021)).

## Discussion

In this Summary Judgment Motion, Northeast Bank argues that Count One of the Complaint should be dismissed on grounds that the Deed that conveyed the Property from Jefferson Realty to Jefferson DE was validly executed and was not a product of fraud or forgery, or obtained by false pretenses.  Northeast Bank does not concede or dispute – or even address the truth or falsity of – the suspicious circumstances alleged by Jefferson Realty in the Complaint that caused Riverside Abstract to release the Deed from escrow because, as Northeast Bank asserts, under New York law, a valid deed that is released from escrow as a result of a fraud is – at the most – voidable, but not void, as a matter of law.

In considering the issue presented on this Summary Judgment Motion, the Court must answer two questions.  First, has Northeast Bank shown that there is no genuine dispute of material fact that Jefferson Realty created and tendered a valid deed to Riverside Abstract in connection with the transaction contemplated in its confirmed Chapter 11 Plan?  And second, has Northeast Bank shown that there is no genuine dispute of material fact that Jefferson DE did not obtain the Deed by false pretenses?  And in considering these questions, the Court must take care to differentiate between a deed that is *created* by fraud, forgery, or false pretenses, as opposed a deed that is *released from escrow* for these kinds of reasons.

As the moving party, Northeast Bank bears the burden to demonstrate the absence of a genuine dispute as to any material fact, and all of the reasonable inferences to be drawn from the underlying facts must be viewed by this Court in the light most favorable to the plaintiff as the party opposing the motion.  *See Anderson*, 477 U.S. at 249, 255; *Hayut*, 352 F.3d at 743.  The Court considers these questions in turn.

_Whether Northeast Bank Has Shown that There Is No Genuine Dispute of Material Fact that Jefferson Realty Created and Tendered a Valid Deed to Riverside Abstract_

The first question that the Court must consider on this Summary Judgment Motion is whether Northeast Bank has shown that there is no genuine dispute of material fact that the Deed created and tendered by Jefferson Realty and Mr. DeLuca was a valid deed.

Northeast Bank argues that the Deed is valid, or at most voidable, and not void _ab initio_, because, in substance, Jefferson Realty and Mr. DeLuca knew exactly what they were doing when, on November 14, 2020, Jefferson Realty, by its principal Mr. DeLuca, created and executed the Deed and, on December 4, 2020, Mr. DeLuca's signature on the Deed was acknowledged before a notary and Mr. DeLuca "personally delivered" the Deed to Riverside Abstract as the escrow agent for the transfer of the Property from Jefferson Realty to Jefferson DE.  Compl. ¶ 13.  _See_ Fiveson Aff. ¶ 16; DeLuca Aff. ¶ 7.

Northeast Bank also argues that, in substance, Jefferson Realty's confirmed Chapter 11 Plan provides for exactly this transaction to occur – and specifically, that under the Plan's terms as confirmed by this Court without objection, Jefferson Realty was obligated to deed the Property to Jefferson DE, and to convey the Deed to Riverside Abstract as the escrow agent, for the sale of the Property to Jefferson DE.  As the Confirmation Order addressing Jefferson Realty's obligations states, "in furtherance of the Plan, provided the Debtor or the Purchaser satisfies the conditions set forth . . . in the Plan, the Debtor is directed to sell, transfer, and convey the Property to the Purchaser as set forth in the Plan."  Confirmation Order at 2.

And as to the dispute giving rise to the Complaint, and the assertedly suspicious circumstances surrounding the communications that led to the release of the Deed and the closing of the sale of the Property, Northeast Bank asserts that, in substance, whatever those facts and circumstances may be, they do not change the facts that require the conclusion – as a matter

of law – that Jefferson Realty and Mr. DeLuca tendered a valid deed to Riverside Abstract, that the Deed was not a forgery or obtained under false pretenses, and therefore it is entitled to judgment on Count One at this time.  Fiveson Aff. ¶ 19.

Jefferson Realty disagrees.  It points to the communications that led to the release of the Deed by Riverside Abstract and the closing of the sale of the Property, and highlights a document that it asserts is a forgery – "a purported signature page of a settlement statement . . . purporting to approve the transaction" and describes the document as "a transpositional forgery of [Mr. DeLuca's] signature."  Compl. ¶¶ 21, 22.  *See* DeLuca Aff. ¶ 9.  And it asserts that, in substance, the fraudulent conduct associated with this should invalidate the Deed and render it a nullity.

Equally troubling, Jefferson Realty points to a forged or fabricated e-mail account and address that is not, it asserts, Mr. DeLuca's e-mail address, nor an address that he has ever used, to provide that signature page documentation to Riverside Abstract, in order wrongfully to facilitate the release of the Deed and the closing of the sale of the Property.  Compl. ¶¶ 25, 26.  *See* DeLuca Aff. ¶ 9.  And Jefferson Realty alleges that Jefferson Capital, Mr. Silverberg, and Jefferson DE committed "crimes in aid of the fraud . . . to deprive Wilson [Investors] of the proceeds of the refinancing [of the Property]."  Compl. ¶ 28.  For all of these reasons and more, it asserts that the Deed was "a product of forgery and was released under false pretenses due to forgery and deception."  Response to Material Facts ¶ 8.

New York law has long recognized that a forged deed is void *ab initio*.  Viewed another way, if the purported "deed" is a forgery, it never came into existence in the first place.  But not every fraudulent or even questionable act associated with a deed or a real estate closing is a forgery, and not every forgery is the same as a forged deed.  Simply stated, a forged deed is not a

deed at all, and such a "deed" is different as a matter of law from a deed that bears an authentic signature and authority for the conveyance, but then changes hands, and transfers title, as the result of a subsequent forgery or fraud.

But what, exactly, is a forged deed?  As a starting point, forgery can be defined as "the act of fraudulently making a false document or altering a real one to be used as if genuine" and "a false or altered document made to look genuine by someone with the intent to deceive." *Forgery, Black's Law Dictionary* (11th ed. 2019).  As the Supreme Court has observed, the question of forgery turns on the genuineness of execution of the document, rather than on a misrepresentation of facts.  *Gilbert v. U.S.*, 370 U.S. 650, 658 (1962) (stating that "where the 'falsity lies in the representation of facts, not in the genuineness of execution,' it is not forgery") (quoting *Marteney v. U.S.*, 216 F.2d 760, 763-64 (10th Cir. 1954)).

To the same effect, as the New York Court of Appeals has observed, "[a] forged deed that contains a fraudulent signature is distinguished from a deed where the signature and authority for conveyance are acquired by fraudulent means.  A deed containing the title holder's actual signature reflects 'the assent of the will to the use of the paper or the transfer,' although it is assent 'induced by fraud, mistake or misplaced confidence.'"  *Faison,* 25 N.Y.3d at 225 (citing cases).

And as the New York Supreme Court's Appellate Division-Second Department found in *Selene Finance, L.P. v. Jones*, a deed that was executed by use of a forged power of attorney is void *ab initio*, and a mortgage based on such a deed is likewise invalid.  *Selene Fin., L.P.*, 203 A.D.3d at 1194, 166 N.Y.S.3d at 642.  There, the court found that "[t]he defendant demonstrated her prima facie entitlement to judgment as a matter of law by submitting evidence . . . which demonstrated that the 2009 power of attorney was forged, and that the 2009 deed was obtained

by false pretenses and thus, was void." *Id*. The court also noted that the maker of the forged power of attorney pleaded guilty to the forgery in a criminal proceeding. *Selene Fin., L.P.*, 203 A.D.3d at 1192, 166 N.Y.S.3d at 641.

Similarly, as one bankruptcy court has observed, "[i]t is well established that a forged deed is a void instrument and will, as a general rule, transfer no title to property." *Grimes v. Green Point Savings Bank* (*In re Grimes*), 147 B.R. 307, 313 (Bankr. E.D.N.Y. 1992) (Feller, J.) (citing cases). And the court explained that "[t]he term 'forgery' encompasses not only signatures, but also signatures obtained by artifice, trick or device." *Id*. There, the court concluded that in the absence of "independent testimony or other objective evidence in support of the alleged forgery," or "other objective evidence supportive of her alternative forgery assertion, i.e., that she was tricked into signing believing it to be some other instrument," relief was not warranted. *In re Grimes*, 147 B.R. at 314.

Here, the record shows that there is no genuine dispute of material fact that Mr. DeLuca executed the Deed on behalf of Jefferson Realty, acknowledged it before a notary, and delivered it to Riverside Abstract. As Jefferson Realty states in the Complaint and Mr. DeLuca testified, Mr. DeLuca personally signed the Deed and delivered it to Riverside Abstract. Compl. ¶ 13; *see* DeLuca Aff. ¶ 7. The Complaint does not state, and the record does not show, or even suggest, that Mr. DeLuca's signature on the Deed was somehow not his own or transposed from another document, or that he did not understand that the document that he was signing was the Deed, or that he was acting without authority, or that his signature on that document was somehow induced by "artifice, trick, or device." Nor is there any other indication in the record that Mr. DeLuca was unaware that he was signing a deed. In fact, his own testimony in his affidavit is to the contrary.

In addition, the record also shows that Mr. DeLuca's signature on the Deed was "properly executed before a notary and was duly acknowledged by the licensed notary," who is an attorney.  Fiveson Reply Aff. ¶ 6.  *See* Fiveson Aff. ¶ 17 and Exh. D (Deed).  Courts recognize that an acknowledgement such as this gives rise to a presumption of authenticity, "which presumption . . . can be rebutted *only* after being weighed against any evidence to show that the subject instrument was not duly executed."  *ABN AMRO Mortg. Group*, 91 A.D.3d at 803, 939 N.Y.S.2d at 73.  And as the New York Court of Appeals found more than a century ago, that presumption may be overcome only "on proof so clear and convincing so as to amount to a moral certainty."  *Albany Cnty. Sav. Bank*, 149 N.Y. at 80.

Nor should the presumption of authenticity be overcome by evidence from "interested witnesses," such as Mr. DeLuca here.  *Beshara*, 51 A.D.3d at 838, 858 N.Y.S.2d at 352.  And here, the record does not show, or even suggest, that there is persuasive and credible evidence to overcome the presumption of validity created by the notary's acknowledgement of Mr. DeLuca's signature on the Deed.

Further, the authenticity of Mr. DeLuca's execution and delivery of the Deed on behalf of Jefferson Realty, the Chapter 11 debtor here, to Riverside Abstract in connection with the transfer of the Property to Jefferson DE, is consistent with the extensive record in this case. Jefferson Realty successfully confirmed a Chapter 11 Plan, and under the terms of the Confirmation Order and the Plan, Jefferson Realty and Mr. DeLuca were obligated to deed the Property to Jefferson DE.  *See* Confirmation Order at 2; DeLuca Aff. ¶ 3.

And finally, none of this is changed by Jefferson Realty's assertions that Riverside Abstract released the Deed, and Jefferson DE obtained the Deed, based on a fraudulent and forged settlement statement.  Jefferson Realty avers that, in substance, a forged settlement

statement with a copy of Mr. DeLuca's signature was created and forwarded to Riverside Abstract from a fabricated e-mail address that was designed to appear to be from Mr. DeLuca – but was not.  And it alleges that this was done in order to bring about the release of the Deed.

To be sure, these allegations are profoundly troubling, particularly in the context of the implementation of a confirmed Chapter 11 plan, approved by this Court's Confirmation Order. If it is established that a fraudulent and intentionally misleading settlement statement was created bearing Mr. DeLuca's fabricated signature, and that it was sent by fraudulent and intentionally misleading means, including from a fabricated e-mail account designed to appear to be from Mr. DeLuca, then there may be consequences.  If professionals appearing before this Court were involved, then there may be additional consequences.  But those are questions for another day. The asserted fraudulent and misleading conduct that led to the *release* and recording of the Deed is not the same as a fraud in the *execution* of the Deed.  Nor does that conduct render Jefferson Realty's and Mr. DeLuca's execution and delivery of the Deed a forgery, or render the Deed a nullity, or void *ab initio*.

Accordingly, and based on the entire record, the Court finds that Northeast Bank has shown that there is no genuine dispute of material fact that Jefferson Realty created and tendered a valid Deed to the Property to Riverside Abstract.  Put another way, it has shown that there when Jefferson Realty and Mr. DeLuca delivered the Deed to Riverside Abstract as the escrow agent, the Deed was valid and not a product of forgery nor based upon a forgery.  While Jefferson Realty may be correct that the Deed was later released by Riverside Abstract as a result of a forgery – that is, the allegedly fraudulent settlement statement bearing the false signature of Mr. DeLuca, sent from a fictitious e-mail account – that is not the same as a false signature on the Deed itself at the time of its creation.

_Whether Northeast Bank Has Shown that Jefferson DE Did Not Obtain the Deed by False Pretenses_

The second question that the Court must consider on this Summary Judgment Motion is whether Northeast Bank has shown that there is no genuine dispute of material fact that Jefferson DE did not obtain the Deed by false pretenses.

Northeast Bank argues that the Deed was not obtained by false pretenses for many of the same reasons that it argues that the Deed was valid, because, in substance, Jefferson Realty and Mr. DeLuca knowingly created and executed the Deed on November 14, 2020, and acknowledged the Deed before a notary and delivered it to Riverside Abstract as the escrow agent on December 4, 2020.  Fiveson Aff. ¶ 16.  _See_ DeLuca Aff. ¶ 7.

Again, Jefferson Realty disagrees, and points to the same troubling allegations surrounding the creation of the assertedly fraudulent settlement statement and the use of that statement to bring about the release of the Deed by Riverside Abstract.  Those circumstance, it asserts, are sufficient to create a genuine dispute of material fact as to whether the Deed was obtained by false pretenses here.

As the New York Court of Appeals explained more than a century ago, the procurement of a deed by "false pretenses" requires a showing that somehow, the party making the deed lacked "some assent of the will."  _Marden_, 160 N.Y. at 49.  As the Court explained, "[t]he genuine signature of a party may be procured by some trick or device to a piece of blank paper, and a deed or other instrument subsequently written over it without his knowledge" for a question of false pretenses in the procurement of a deed to arise.  _Id_.  Or alternatively, "a party could procure another to sign a paper by means of hypnotic suggestions or influences."  _Id_.  But under such extraordinary circumstances, even though the signature on the document was genuine, the "assent of the will" would be lacking, and the resulting document would be "simply

a spurious paper and of no more effect than any other forgery." *Id.*

And as the Second Circuit has noted, the procurement of a deed by false pretenses may also be found where the signer of the deed was "unaware of the nature of the instrument he or she was signing, such as where the signer is illiterate, or blind, or ignorant of the alien language of the writing, and the contents thereof are misread or misrepresented to him." *In re Stallmer*, 792 F. App'x 856, 858 (2d Cir. 2019). There, the Second Circuit also stated that "if the signer was aware that he was signing a deed, but was misled as to the deed's purpose, then the deed is deemed to be procured by fraudulent inducement and is merely voidable." *In re Stallmer*, 792 F. App'x at 858 (citing *Weiss*, 157 A.D.3d at 11, 65 N.Y.S.3d at 156).

But here, as noted above, the record shows that there is no genuine dispute of material fact that Mr. DeLuca executed the Deed on behalf of Jefferson Realty, acknowledged it before a notary, and delivered it to Riverside Abstract, all pursuant to Jefferson Realty's confirmed Plan and this Court's Confirmation Order. The record also shows that Mr. DeLuca was aware that he was signing a deed when he signed and delivered the Deed to Riverside Abstract, pursuant to the terms of the Confirmation Order and the Plan. *See* Confirmation Order at 2; Compl. ¶ 13; DeLuca Aff. ¶ 7. There is no persuasive or credible evidence that Mr. DeLuca somehow was induced by "some trick or device" to affix his signature to a blank paper, or otherwise induced to execute the Deed without "some assent of the will." *Marden*, 160 N.Y. at 49. Nor is there any indication that he was somehow "misled as to the deed's purpose." *In re Stallmer*, 792 F. App'x at 858 (citing *Weiss*, 157 A.D.3d at 11, 65 N.Y.S.3d at 156).

These conclusions are buttressed by the fact that Mr. DeLuca's signature was "properly executed before a notary and was duly acknowledged by the licensed notary." Fiveson Reply Aff. ¶ 6. *See* Fiveson Aff. Exh. D (Deed). This gives rise to a presumption of authenticity, and

that "presumption . . . can be rebutted *only* after being weighed against any evidence to show that the subject instrument was not duly executed." *ABN AMRO Mortg. Group*, 91 A.D.3d at 803, 939 N.Y.S.2d at 73.  And that proof must be "so clear and convincing so as to amount to a moral certainty." *Albany Cnty. Sav. Bank*, 149 N.Y. at 80.  Evidence from "interested witnesses" such as Mr. DeLuca is not likely to tip the balance, and does not do so here.  *Beshara*, 51 A.D.3d at 838, 858 N.Y.S.2d at 352.

Accordingly, and based on the entire record, the Court finds that Northeast Bank has shown that there is no genuine dispute of material fact that Jefferson DE did not obtain the Deed by false pretenses.  That is, it has shown that this is not a situation where "some trick or device" was used to fool Mr. DeLuca into executing the Deed on behalf of Jefferson Realty, and instead, that Mr. DeLuca's signature on behalf of Jefferson Realty reflected "some assent of the will" to create a Deed to the Property and to convey it to Jefferson DE, all in accordance with the confirmed Plan and the Confirmation Order.  And here again, while Jefferson Realty may be correct that the Deed was later released by Riverside Abstract as a result of a forgery – that is, the allegedly fraudulent settlement statement bearing the false signature of Mr. DeLuca, sent from a fictitious e-mail account – that is not the same as a false signature on the Deed itself at the time of creation, and it does not create a genuine dispute of material fact that the Deed was somehow obtained by false pretenses.

## Conclusion

Based on the entire record and for the reasons stated herein, this Court finds and concludes that Northeast Bank has shown that there is no genuine dispute as to a material fact that it is entitled to judgment as a matter of law dismissing Count One of the Complaint, which seeks a Declaratory Judgment that "based on the illegal and fraudulent acts of [Jefferson Capital

and Mr. Silverberg] and others, the Deed is void *ab initio* and should be so declared by the Court."  Accordingly, the Summary Judgment Motion is granted and Count One is dismissed.

An order in accordance with this Memorandum Decision shall be entered simultaneously herewith.



Dated: Brooklyn, New York
September 28, 2023

Elizabeth S. Stong
United States Bankruptcy Judge