## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

In re:

      Case No. 1-18-44060-ESS

JEFFERSON REALTY PARTNERS LLC,

      Chapter 11

     Debtor.

_____

JEFFERSON REALTY PARTNERS LLC,

     Plaintiff,

   -against-

      Adversary Proceeding No. 21-01040-ESS

1308 JEFFERSON CAPITAL, LLC, ERAN
SILVERBERG, JEFFERSON DE LLC and
RIVERSIDE ABSTRACT LLC,

      Hon. Elizabeth S. Strong

     Defendants,

   -and-

NORTHEAST BANK, a Maine Banking
Corporation,

     Intervenor-Defendant.

-------------------------------------------------------- X

### OPPOSITION OF ERAN SILVERBERG TO MOTION FOR DEFAULT JUDGMENT

      Eran Silverberg, by and through his undersigned counsel, hereby files this Opposition to

the Motion of Debtor Jefferson Realty Partners LLC (the "Debtor") for a Default Judgment (ECF

No. 143) (the "Motion"), and in support thereof states as follows:

### INTRODUCTION

      1.     Mr. Silverberg respectfully submits that the Court should deny the Motion as

against him.  Mr. Silverberg has a reasonable excuse for his failure to timely answer the

Complaint, which was not willful, and has a meritorious defense to the Debtor's claims in this

Adversary Proceeding.  Moreover, Mr. Silverberg is filing his Answer herewith, and there is no prejudice to the Debtor from this short delay.

2.      In particular, as set forth further below and in the accompanying Declaration of Eran Silverberg, Mr. Silverberg never received a copy of the Court's Order granting the motion of his prior counsel to withdraw, in which the Court set a deadline for Mr. Silverberg to retain new counsel.  Nor did he receive a copy of the Court's Order setting a deadline for his Answer to the Complaint.

3.      Based upon the Court's docket, it appears that the Court's Order relieving prior counsel was never served, while the Court's Order setting a deadline for the Answer was inexplicably served on Offit Kurman LLP ("Offit"), counsel for a *different party*: dismissed-defendant Riverside Abstract LLC ("Riverside").  Offit never represented Mr. Silverberg in this case, and he never authorized them to accept service of any papers in this action.

4.      In addition to not receiving the Court's Orders, Mr. Silverberg was dealing with a medical issue in October and November 2024, which culminated in surgery in December 2024.

5.      Accordingly, for multiple, independent reasons, his failure to timely answer the Debtor's Complaint was not willful and should be excused.

6.      As set forth below, Mr. Silverberg also has a meritorious defense to the Complaint.  Among other things, Mr. Silverberg expects that discovery in this action will show that the Debtor's allegations of "fraud" and "forgery" were invented out of whole cloth.

7.      The Debtor's principal, Lorenzo DeLuca, is a bad actor who has a demonstrated history of doing or saying anything in order to order to reap financial gain for himself, even if doing so requires unethical conduct.  The convoluted and tangled history here, and Mr. DeLuca's shifting involvement with different parties and different attempts to obtain the underlying property, underscores the baseless nature of Mr. DeLuca's allegations.

315973928v.3

8.      Mr. DeLuca sold a distressed mortgage relating to the subject property in this case, 1308 Jefferson Street (the "Property"), to 1308 Jefferson Capital LLC ("1308 Capital"), of which Mr. Silverberg is a member.  1308 Capital thus stepped into the shoes of the prior lender for the Property, which had already commenced a foreclosure proceeding against the Debtor as the borrower of the loan.

9.      A few days after selling the mortgage, Mr. DeLuca tried to obtain title to the Property through a different entity, Delshah Ventures, LLC ("Delshah") based on a purported lien against the Property that the Debtor had already satisfied.[1]

10.     After pursuing that gambit through Delshah, Mr. DeLuca then purchased an interest in the Debtor and became involved in the foreclosure proceeding, attempting to stymie the foreclosure of the Property.

11.     In other words, after selling the mortgage to 1308 Capital, Mr. DeLuca tried to keep 1308 Capital from collecting on it through multiple different methods and parties.

12.     Mr. DeLuca did not stop there.  When those efforts failed, he commenced this Bankruptcy Proceeding on behalf of the Debtor.  In the bankruptcy proceeding before this Court, he argued to the Court that 1308 Capital's claim should be reduced to $0, *i.e.*, the mortgage ***he sold*** to 1308 Capital was worthless.

13.     Rather than litigate that issue to conclusion, 1308 Capital reached a settlement agreement with Mr. DeLuca, which was memorialized in the Chapter 11 Plan approved by the Court (the "Plan").

14.     As is most relevant here, under the terms of the Plan, Mr. DeLuca was a minority member of a new LLC that would own the Property, and was also to receive $350,000 from the

---

[1] Upon information and belief, Mr. DeLuca utilized Delshah for certain transactions because its name is similar to another entity active in New York real estate with which Mr. DeLuca is not affiliated, Delshah Capital, and Mr. DeLuca hoped to deceive counterparties into thinking they were dealing with Delshah Capital, rather than with Mr. DeLuca.

3

sale of the Property *if* there were any "Net Proceeds," as defined in the parties' agreement, *i.e.*, proceeds net of certain expenses and costs.

15.     When Mr. DeLuca realized that, based upon the expenses associated with the sale, there would be no "Net Proceeds," and he would not receive $350,000, he apparently decided to embark upon a fraudulent scheme to try to scuttle the transfer of the Property or otherwise obtain the $350,000 by deceiving this Court.

16.     Mr. DeLuca's apparent scheme was to come before this Court and cry "fraud" and "forgery."  As it happens, this is a tactic Mr. DeLuca has used in other litigations.

17.     Mr. DeLuca has a demonstrated history, both in this case and elsewhere, of doing and saying whatever is necessary to try to reap a financial reward for himself.

18.     In connection with this Property alone, Mr. DeLuca has been, at various times, the mortgage holder; the holder of a purported lien and default judgment against the Debtor; a principal of the Debtor; and a member of one of the defendants in this Adversary Proceeding (and, in fact, Mr. DeLuca is *still* a member of that defendant, even though he is suing that entity). Setting aside whether Mr. DeLuca should be estopped from contradicting his past positions relating to the Property, the mere fact that Mr. DeLuca has tried to extract money from this Property through so many different roles and devices is evidence alone that his assertions carry little weight.

19.     Mr. Silverberg fully expects discovery to show that there was no "fraud" or "forgery" by, or with the knowledge of, Mr. Silverberg, and that Mr. DeLuca's claims against Mr. Silverberg are meritless.

20.     There is no prejudice to the Debtor.  Mr. Silverberg is submitting his proposed Answer herewith, so there will be no further delay.  The delay of just over two months is not

prejudicial to the Debtor, as the delay is quite short relative to the overall length of this Adversary Proceeding to date, and the parties can proceed with discovery promptly.

21.     For all of these reasons, and those set forth below and in the accompanying Silverberg Declaration, the Motion should be denied.

## BACKGROUND

### The Property and Underlying Foreclosure Proceeding

22.     On or about April 10, 2008, the Debtor and others (collectively, the "Borrowers") obtained a loan from Eastern Capital Group LLC ("Eastern") in connection with the Property in the amount of $1.8 million (the "Loan").  *See* Case No. 1-18-44060-ess, ECF No. 61 at pg. 18 of 79.

23.     In connection with the Loan, the Debtor and others delivered to Eastern a Mortgage Consolidation Modification Spreader and Extension Agreement (the "Mortgage") encumbering the Property.  *See id.* at pg. 19 of 79.

24.     On or about November 12, 2014, Eastern assigned the Mortgage to Jefferson & 46 Notebuyer, LLC ("Notebuyer"), which was controlled by Mr. DeLuca.  *See id.*

25.     On or about June 27, 2016, Mr. DeLuca, on behalf of Notebuyer, sold and assigned the Mortgage to 1308 Capital.  *See id.*

26.     Prior to Mr. DeLuca's sale of the Mortgage to 1308 Capital, Eastern had commenced a mortgage foreclosure action in the Supreme Court of the State of New York, County of Kings, *Eastern Capital Group LLC v. Jefferson Realty Partners, et al.*, Index No. 14010/2013 (the "Foreclosure Action").  *See id.* at pg. 20 of 79.

27.     Upon its purchase of the Mortgage from Mr. DeLuca, 1308 Capital stepped into the shoes of the lender and became the plaintiff in the Foreclosure Action.

28.      Days after selling the Mortgage to 1308 Capital, on July 5, 2016, Mr. DeLuca commenced an action against the Debtor, through an entity called Delshah, in Kings County Supreme Court, Case No. 511312/2016 (the "Lien Action").

29.      Delshah claimed to hold a lien against the Property based upon a purported assignment from an entity called Chief Energy, which, upon information and belief, Mr. DeLuca has represented as counsel in other proceedings.

30.      When the Debtor defaulted in the Lien Action, Mr. DeLuca was able to obtain a default judgment against the Debtor for $291,443.05.  A copy of the Lien Action judgment is annexed hereto as **Exhibit A**.

31.      1308 Capital was forced to intervene in that action, pointing out that Mr. DeLuca himself had already executed a satisfaction of the lien in question.  A copy of the lien discharge, signed by Mr. DeLuca and filed in the Lien Action, is annexed as **Exhibit B.**

32.      Delshah, represented by the Debtor's former counsel in this Adversary Proceeding, Yenisey Rodriguez-McCloskey, opposed 1308 Capital's attempt to vacate the default judgment against the Debtor and sought to have herself appointed as a co-receiver for the Property in the Lien Action.  A copy of an affirmation submitted by Ms. Rodriguez-McCloskey in the Lien Action is annexed as **Exhibit C**.

33.      The receiver in the Foreclosure Action later sought to intervene and noted that Delshah's Lien Action "was premised on what appears to be a falsehood."  A copy of the affirmation submitted by the Foreclosure Action receiver's counsel is annexed as **Exhibit D**.

34.      At some point thereafter, Mr. DeLuca switched hats again, and became a principal of the Debtor, despite having obtained a default judgment against it.  *See, e.g.,* Complaint, ECF No. 1, ¶ 10.

35.     Upon becoming a principal of the Debtor, Mr. DeLuca took steps in the Foreclosure Action to try to prevent the foreclosure or otherwise stymie 1308 Capital's efforts to recover on the Mortgage.  *See* Silverberg Decl. ¶ 4.[2]

### The Debtor's Bankruptcy Proceeding

36.     In an apparent effort to stop the Foreclosure Action, the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code on July 15, 2018 (the "Bankruptcy Proceeding"). Case No. 1-18-44060-ess, ECF No. 1.

37.     In the Bankruptcy Proceeding, Mr. DeLuca, through the Debtor, argued that 1308 Capital had no viable claim, and that the Mortgage was effectively worthless, largely based upon purported conduct by ***Eastern*** prior to the time that Mr. DeLuca sold the Mortgage to 1308 Capital.  *See* Case No. 1-18-44060-ess, ECF Nos. 31, 41.

38.     In other words, the Debtor and Mr. DeLuca represented to this Court that the Mortgage Mr. DeLuca had sold to 1308 Capital was, effectively, worthless.  *See id.*  In so doing, Mr. DeLuca arguably committed fraud, either on 1308 Capital (by failing to disclose that the Mortgage might have no value because of prior conduct by Eastern) or on the Court (by asserting that Mortgage had no value when, in fact, Mr. DeLuca knew otherwise).

### The Parties Enter Into a Settlement Agreement

39.     Rather than litigate the Debtor's claim objection relating to the Mortgage to conclusion and risk losing its investment entirely, 1308 Capital opted to enter into a settlement with the Debtor (the "Settlement Agreement").  *See* Case No. 1-18-44060-ess, ECF No. 61 at pgs. 18-27 of 79.

---

[2] The summary set forth in paragraphs 22 through 35 above does not address the entire history of the Foreclosure Action or the Lien Action.  There also was or were one or more other litigations involving the Debtor and/or its principals relating to the Property that are not addressed herein.  The multi-year, multi-litigation history of the Debtor and this Property is so convoluted that it would take many, many pages to summarize and unravel.  Here, Mr. Silverberg summarizes only the key points most pertinent to the Motion.

315973928v.3

40.     The Settlement Agreement was memorialized as Exhibit A to the Debtor's Chapter 11 Plan of Reorganization (ECF No. 61), *i.e.*, the Plan.  *See id.*

41.     Mr. DeLuca signed the Settlement Agreement on behalf of the Debtor.  *See id.* at pg. 27 of 79.

42.     Under the terms of the Agreement, title to the Property would be transferred, free and clear of all liens, to a new joint venture between 1308 Capital and an LLC formed by Mr. DeLuca, 463 Wilson Investors LLC ("463 Wilson").  *See id.* at pgs. 25-26 of 79.

43.     Under the terms of the Agreement, the joint venture would also obtain a refinancing of the Property.  *See, e.g., id.* at pg. 79 of 79.

44.     The joint venture was 1308 Jefferson DE, LLC ("1308 DE") and was formed pursuant to a Limited Liability Company Agreement (the "LLC Agreement") annexed to the Settlement Agreement.  *See id.* at pgs. 28-79.

45.     Under the terms of the LLC Agreement, 1308 Capital held 90% of the membership interests in 1308 DE.  *See id.* at pg. 78 of 79.

46.     1308 Capital was also the managing member of 1308 DE.  *See id.* at pg. 36 of 79.

47.     Under the terms of the LLC Agreement, to the extent there were any "Net Proceeds" from the transfer and refinancing of the Property, those "Net Proceeds" would be distributed in a waterfall, in which the first $350,000 of any "Net Proceeds" would be distributed to the "Minority Member," *i.e.*, Mr. DeLuca's new entity, 463 Wilson.  *See id.* at pg. 49 of 79; *see also id.* at 29 of 79 (stating that 463 Wilson "shall be owned by Lorenzo DeLuca").

48.     The LLC Agreement defined "Net Proceeds of a Capital Transaction" as:

> the net cash proceeds received by the Company from a Capital Transaction, including, without limitation, all principal, interest and other payments with respect to any note or other obligation received by the Company in connection with a Capital Transaction, remaining after (a) ***payment by the Company of all costs and expenses including, but not limited to, broker fees, legal fees and***

*other customary closing costs incurred in connection with such Capital Transaction, including with limitation, any costs incurred to repay any debt or obligation of the Company*, (b) repayment of any amounts outstanding on any Approved Loans, and (c) setting aside Reserves as determined by the Managing Member in good faith.

*Id.* at pg. 36 of 79 (emphasis added).

49.     Thus, Mr. DeLuca's entity would only receive a payment if there were "Net Proceeds" from the sale of the Property.

### The Transfer of the Property to an Entity Partly-Owned by Mr. DeLuca

50.     In or about November 2020, Mr. DeLuca apparently realized that the sale of the Property might not generate enough "Net Proceeds" to result in a payment to him of $350,000. *See, e.g.,* Complaint Exhibit B, ECF No. 1-2.

51.     Mr. DeLuca was fully informed about the closing of the Property, including the scheduling of an all-hands call to resolve outstanding issues.  *See id.*

52.     Mr. DeLuca admits that he signed the deed transferring the property to 1308 DE, and that he personally delivered that legitimate deed to Riverside on December 4, 2020.  *See* Complaint, ECF No. 1, ¶ 13.

53.     The transfer of the Property to 1308 DE closed on or about December 14, 2020. *See, e.g.,* Case No. 1-18-44060-ess, ECF No. 99.

54.     Ultimately, there were no "Net Proceeds," as defined in the LLC Agreement, because of, *inter alia*, title charges and bank closing charges, totaling $393,973.84.  *See* Complaint, ECF No. 1, ¶ 18; *see also* Complaint, Exhibit C, ECF No. 1-3.

55.     These fees were necessitated largely by the Plan's requirement, approved by this Court, that the Property be transferred "free and clear" of liens and other encumbrances, which resulted in significant additional transaction costs.

9

56.     Under the definition of "Net Proceeds" in the LLC Agreement, these charges were costs that would be deducted from any proceeds from the transaction.  *See* Case No. 1-18-44060-ess, ECF No. 61 at pg. 36 of 79.

**The Debtor Commences the Adversary Proceeding**

57.     Unsatisfied that there were no "Net Proceeds," and apparently determined to obtain the $350,000 by any means necessary, Mr. DeLuca, acting through the Debtor, commenced this Adversary Proceeding on April 9, 2021 against Mr. Silverberg, 1308 Capital, and 1308 DE, even though Mr. DeLuca is a member of 1308 DE through 463 Wilson.  *See* Complaint, ECF No. 1.

58.     Mr. DeLuca alleges that Mr. Silverberg, 1308 Capital, and 1308 DE engaged in misconduct "in order to steal the" Property, *see id.* ¶ 1, even though 1308 DE held title to the Property when the Complaint was filed and Mr. DeLuca is a member of 1308 DE through 463 Wilson, *i.e.*, Mr. DeLuca is an indirect owner of the Property through 1308 DE.

59.     Until April 6, 2022, the Debtor was represented in the Adversary Proceeding by, among others, Yenisey Rodriguez-McCloskey, who, as set forth above, previously represented Delshah in its efforts to obtain title to the Property and sought to be appointed as a co-receiver for the Property.  She was also a creditor of the Debtor for "Receiver Fees" in the Bankruptcy Proceeding.  *See, e.g.,* Case No. 1-18-44060-ess, ECF No. 9 at pg. 1.

60.     In the Complaint, Mr. DeLuca claims that there was a "forgery" on the settlement statement that allowed the Property transfer to close.  *See, e.g., id.* ¶¶ 21-29.

61.     Mr. DeLuca concedes that the signature on the settlement statement appears to be "identical" to his signature, but he alleges that the signature on the settlement statement was "copied and pasted…to make it appear that DeLuca had approved the closing and the related disbursements when in fact he had not."  *See id.* ¶ 24.

62.     In the Complaint, Mr. DeLuca does not allege who purportedly "copied and pasted" the signature that he admits was "identical" to his signature.  *See id.*

63.     Mr. DeLuca also alleges that the signature page was sent to Riverside from an email address that is "not DeLuca's actual email address."  *See id.* ¶¶ 25-26.

64.     In the Complaint, Mr. DeLuca does not allege who set up this purported "fake" email address or sent the email from that address attaching the signature page. *See id.*

65.     Without any supporting facts, Mr. DeLuca nonetheless alleges in the Complaint that the supposed fraud "was planned by Eran Silverberg and others." *See id.* ¶ 28.

66.     Although Mr. DeLuca does not allege in the Complaint that Mr. Silverberg forged Mr. DeLuca's signature or set up the supposed fake email address, he claims that Mr. Silverberg can be found liable for fraud because he purportedly "refused to share information regarding the closing, the distribution of proceeds, and generally how he intended to perform under the Plan of Reorganization." *See id.* ¶ 29.

67.     Mr. DeLuca also alleges, falsely, that Mr. Silverberg "has not denied that a forgery occurred," which is, of course, not true. *See id.* ¶ 20.

68.     Based upon these slim, unsubstantiated allegations, Mr. DeLuca asserts that Mr. Silverberg, individually, should be held liable for damages. *See generally* ECF No. 1.

69.     Based upon these allegations, the Debtor also obtained from the Court a *status quo* order on April 23, 2021.  Case No. 1-18-44060-ess, ECF No. 106.  As a result of that *status quo* order, 1308 DE was unable to pay the new lender for the Property, Northeast Bank ("Northeast").  Northeast accordingly commenced a new foreclosure action relating to the Property: *See* Index No. 513116/2022 (Sup. Ct. NY Cty.) (the "Northeast Action").

70.     Thus, Mr. DeLuca's actions also resulted in an entity of which he is a part owner, 1308 DE, being deprived of the Property.

## **Mr. DeLuca's History of Improper Conduct**

71.     Although Mr. Silverberg hesitates to bring up Mr. DeLuca's past conduct or conduct in other actions, because this case involves issues of fraud and will turn on witness credibility, Mr. Silverberg briefly raises these issues in connection with demonstrating that he has a potentially meritorious defense.

72.     In or about 1993, Mr. DeLuca was suspended from the practice of law based upon allegations regarding "the disposition of escrow funds." *In re DeLuca*, 193 A.D.2d 208 (1st Dep't 1993). The Supreme Court of New Jersey issued a reciprocal suspension for thirty months starting as of February 28, 1994. *See In re DeLuca*, 154 N.J. 256 (1998). Mr. DeLuca's suspension was lifted by the First Department in April 1997. *In re Deluca*, 230 A.D.2d 234 (1st Dep't 1997).

73.     Mr. DeLuca is a defendant in a lawsuit brought by one of the other members of Delshah—the entity that held the purported "lien" against the Debtor described above. In that action, Mr. DeLuca was accused of fraudulently inducing the plaintiff to purchase certain membership interests in an entity that held a distressed debt mortgage note. *See Shah v. DeLuca, et al.*, Index No. 616337/2022 (Sup. Ct. Nassau Cty.) (the "Shah Action").

74.     In the Shah Action, Mr. DeLuca argued that the plaintiff "deceived the Court into granting a money judgment" against him, which he then sought to vacate. *See* Decision and Order, NYSCEF Doc. No. 77 in the Shah Action .

75.     The New York state court overseeing the Shah Action rejected Mr. DeLuca's argument. *See id.*

76.     Mr. DeLuca also sued the plaintiff in the Shah Action in Richmond County Supreme Court, in apparent retaliation for the plaintiff bringing suit against Mr. DeLuca. *See*

*Amethyst Alt Asset Fund 2016 LLC, et ano. v. Shah, et ano.*, Index No. 150094/2024 (Sup. Ct. Richmond Cty.).

77.     In that action, Mr. DeLuca alleges "tortious and fraudulent conduct" by the defendants.  *See* Complaint in Index No. 150094/2024, NYSCEF Doc. No.

78.     In another case in which Mr. DeLuca was named as a defendant, Mr. DeLuca filed an answer and affirmative defenses alleging that the plaintiff "fraudulently induced [Mr. DeLuca] to purchase a non-performing note and mortgage."  Answer in *Sidecreek LH-1-LLC v. DeLuca*, Index No. 707369/2024, NYSCEF Doc. No. 4.

79.     The foregoing are examples, not an exhaustive list.  These examples demonstrate, however, that Mr. DeLuca has a history of disputes relating to distressed debt sales in which he accuses his counterparties of fraud.

### Relevant Proceedings in the Adversary Proceeding to Date

80.     On September 28, 2023, this Court entered a Memorandum Decision granting the motion of intervenor-defendant Northeast for summary judgment dismissing the Debtor's first cause of action for declaratory judgment.  ECF No. 120.

81.     On May 17, 2024, this Court entered an Order granting prior counsel for Mr. Silverberg, 1308 Capital, and 1308 DE leave to withdraw as counsel.  ECF No. 138.

82.     In that Order, the Court directed, among other things, that Mr. Silverberg "file a notice of appearance of new counsel in the Adversary Proceeding by June 17, 2024."  *Id.*

83.     There is no Affidavit of Service on the Adversary Proceeding docket or the Bankruptcy Proceeding docket indicating that the Court's May 17, 2024 Order was served on Mr. Silverberg.

84.     To the best of his knowledge, Mr. Silverberg never received a copy of the Court's May 17, 2024 Order.  *See* Silverberg Decl. ¶ 6.

13

85.     On October 24, 2024, the Court denied the motion to dismiss made by Mr. Silverberg, 1308 Capital, and 1308 DE through prior counsel on May 26, 2021.  *See* ECF No. 139; *see also* ECF No. 15 (motion to dismiss).

86.     In the October 24, 2024 Order, the Court directed that Mr. Silverberg, 1308 Capital, and 1308 DE answer the Complaint by November 27, 2024.

87.     The Court's Service List stated that Mr. Silverberg should be served via transmittal to Offit.  *See* ECF No. 140.

88.     Offit never represented Mr. Silverberg in the Adversary Proceeding, however. Silverberg Decl. ¶ 7.  Offit represented Riverside.  *See, e.g.,* ECF No. 58 (motion by Riverside signed by Offit).

89.     Mr. Silverberg never retained Offit or otherwise designated them, or authorized them to serve, as his agent.  Silverberg Decl. ¶ 7.

90.     The Certificate of Mailing for the Court's October 24, 2024 shows no service on Mr. Silverberg himself.  *See* ECF No. 141.

91.     To the best of his knowledge, Mr. Silverberg never received a copy of the Court's October 24, 2024 Order.  Silverberg Decl. ¶ 6.

92.     To the best of his knowledge, Mr. Silverberg also did not receive notice of any hearings in this Adversary Proceeding following the withdrawal of his prior counsel.  *Id.* ¶ 8.

93.     In addition to not receiving the Court's Order, Mr. Silverberg was dealing with intense pain and related medical issues in October and November 2024.  *Id.* ¶ 10.

94.     As a result of those issues, Mr. Silverberg underwent abdominal surgery in December 2024.  *Id.*

95.     On January 16, 2025, the Debtor filed the Motion for a default judgment against Mr. Silverberg, 1308 Capital, and 1308 DE.  ECF No. 143.

96.     By the Motion, the Debtor seeks entry of a default judgment in the amount of $350,000, plus interest.  *See id.*

97.     The Motion is not supported by any legal authority or any statements by the Debtor's litigation counsel.  *See id.*

98.     The only "support" for the Motion is a declaration by Mr. DeLuca, which largely consists of him repeating his allegations of "fraud" and "forgery."  *See id.*

99.     To date, the Debtor has not filed any affidavit of service or certificate of service for the Motion on the Court's docket.

100.    The Motion does not otherwise indicate whether or how Mr. Silverberg was served with the Motion.

101.    In fact, to the best of his knowledge, Mr. Silverberg was never served with the Motion.  Silverberg Decl. ¶ 9.

102.    In late January 2025, Mr. Silverberg retained the undersigned counsel in connection with the separate Northeast Action in New York state court.

103.    In connection with getting up to speed on that separate matter, counsel reviewed the docket in the Bankruptcy Proceeding and the Adversary Proceeding because the Northeast Action involves the same Property and many of the same parties, and 1308 DE's default resulting from this Court's *status quo* Order gave rise to the Northeast Action, as set forth above.

104.    It was during that review that counsel discovered that the Debtor had filed the Motion.

105.    Mr. Silverberg was not aware of the Motion until he was informed by counsel. Silverberg Decl. ¶ 9.

106.    Upon learning of the Motion, Mr. Silverberg promptly retained the undersigned counsel to represent him in this Adversary Proceeding as well.

107.    Mr. Silverberg and his counsel worked to file this opposition and his Answer as promptly as possible following their discovery of the Motion.

108.    In fact, Mr. Silverberg submits this opposition and his Answer prior to the February 13 opposition deadline precisely to minimize any further delay.

**ARGUMENT**

**MR. SILVERBERG'S DEFAULT
SHOULD BE EXCUSED AND HIS ANSWER PERMITTED**

109.    Based upon the foregoing and the applicable law, the Court should deny the Motion; excuse Mr. Silverberg's failure timely to file an Answer; and permit the Answer he has filed herewith to be considered in this Adversary Proceeding.

110.    "Courts do not favor entry of a default judgment because it is a 'harsh and drastic remedy'" and runs counter to courts' "prefer[ence] to decide cases on their merits." *In re Mithra Med. Supplies*, 2024 Bankr. LEXIS 2410, at *4-5 (Bankr. E.D.N.Y. Sept. 30, 2024) (collecting cases).

111.    "[B]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 96 (1993).

112.    In order to assess whether "good cause" exists to excuse a default, courts have "widely accepted" three factors: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Id.*

113.    Here, all three factors weigh against entering a default judgment.

114.    **First**, Mr. Silverberg's failure to timely answer the Complaint was not willful.  As set forth above, he was never served with copies of the Court's May 17, 2024 or October 24, 2024 Orders.  *See* paragraphs 81-92, *supra*.

115.    There is no affidavit or certificate of service relating to the May 17, 2024 Order on the docket.  *See id.*

116.    Moreover, the Court's Service List for the October 24, 2024 Order seems to have mistakenly directed service upon counsel for Riverside, rather than service on Mr. Silverberg. *See id.*

117.    On top of never receiving the Court's Orders, Mr. Silverberg was dealing with a medical issue at the time the answer was due, which likely would have impaired his ability to respond by November 27, 2024 even if he had been aware of the Orders.  *See* paragraphs 93-94, *supra*.

118.    In short, Mr. Silverberg's default was not willful.

119.    **Second**, there is no prejudice to the Debtor from the short delay in filing the Complaint.  "A plaintiff may demonstrate prejudice by showing that his 'ability to pursue the claim has been hindered since the entry of the judgment' or by 'the loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment.'"  *Mithra Med.*, 2024 Bankr. LEXIS 2410, at *8.

120.    Importantly, "the Second Circuit has held that ***delay alone is not a sufficient basis for establishing prejudice***."  *Id.* (emphasis added) (citing *Enron*, 10 F.3d at 98).

121.    The ***moving party*** bears "the burden of demonstrating such prejudice," and cannot meet that burden where "it does not address any concerns of prejudice whatsoever."  *Id.*

122.    Here, the Debtor bore the burden of demonstrating prejudice and, like the moving party in *Mithra Med.*, it does not address prejudice at all.  *See* ECF No. 143.

315973928v.3

123.    The word "prejudice" does not appear anywhere in Mr. DeLuca's supporting declaration, and he does not otherwise explain why the Debtor would be prejudiced by Mr. Silverberg's relatively short delay in filing the Answer.  *See id.*

124.    **Third,** Mr. Silverberg has a meritorious defense.  As set forth above, the Debtor's Complaint does not plead any facts linking Mr. Silverberg to any purported forgery or the allegedly falsified email address.  *See* paragraphs 57-68, *supra*.  Mr. Silverberg adamantly denies any fraud or other wrongdoing.  *See* Silverberg Decl. ¶ 5.

125.    Moreover, the Debtor's claims of fraud are, on their face, unbelievable.  Mr. DeLuca admits that the signature on the supposedly forged settlement statement is "identical" to his real signature.  *See* paragraphs 57-68, *supra*.  He does not allege any facts in the Complaint as to who may have "forged" his signature or created the "fake" email address.  *See id.*

126.    The Court should not accept that the Debtor has meritorious claims based simply on Mr. DeLuca's say-so.  As set forth above, Mr. DeLuca has worn so many different hats, and has undertaken so many schemes, in connection with this Property alone that it is difficult to keep track.  He also has a history of misconduct, disputes relating to distressed debt, and accusing other parties of fraud.  *See* paragraphs 71-79, *supra*.

127.    In a fraud case, credibility is critical.  The Court should not make that determination at the pleading stage, particularly given Mr. DeLuca's past conduct and penchant for accusing his adversaries of fraud.

128.    Accordingly, all three *Enron* factors weigh in favor of denying the Motion.

## <u>CONCLUSION</u>

129.    For the foregoing reasons, and those set forth in the accompanying Silverberg Declaration, Mr. Silverberg respectfully requests that the Motion be denied.

Dated: New York, New York

315973928v.3

February 10, 2025

SEYFARTH SHAW LLP


By:    */s/ Owen R. Wolfe*
     Owen R. Wolfe
*Attorneys for Eran Silverberg*
620 Eighth Avenue
New York, NY 10018
Direct Dial:  (212) 218-3389
Email:  owolfe@seyfarth.com